Richard Linas for Petitioner of Quinteros Ramos This is a case where an applicant for asylum appeared before the immigration judge and his merits hearing was pre-permitted. That means that it was never heard on merits. And this occurred on April 4th of 2005. Now, Mr. Ramos had appeared at a previous hearing where the immigration judge went on the record and gave fingerprinting instructions, which are a requirement for asylum applicants. And these instructions were on January 22nd of 2004. Now, there were some new rules regarding the advising of fingerprinting to applicants, and these took effect on April 1st of 2005. Now, I'm curious to note that the warning that this petitioner would have gotten was prior to the enactment of that rule. So just a – Was there something wrong with the warning? I mean, I read it, and he seems to have been told you've got to renew your fingerprints. Right, Your Honor. He was – there were warnings, but it is clear from the record that he – that the petitioner was totally confused, did not understand, was confusing fingerprints. Well, he doesn't say I was confused. I mean, his response as to why he didn't do it, say I was – he says it was too much, I was trying for this other fingerprint kind of thing. Right, Your Honor. What he was talking about was another type of fingerprinting, and that's a very common confusion. This fingerprinting – Well, wait a minute. What do you mean a very common confusion? How do we know that? Because it's very similar in procedure, but it's for different purposes. Was – were you standing next to him during this? Were you the lawyer down there? Yes, Your Honor. And did you ask for a continuance? Your Honor – Did you ask for a continuance? No, no, Your Honor. No, no, Your Honor. Why not? Because the judge plowed through. There was discussion, so I guess the trial attorney for the government informed the judge that the fingerprints were not taken, and when we went on the record, the immigration judge just plowed through inquiring about why the fingerprints were not taken and immediately went into voluntary departure. Why didn't you ask for a continuance? Did you know this was about that? You knew he hadn't renewed his fingerprints before this hearing. Yes, we did. Yes, we did. Well, then why didn't you walk in and ask for a continuance? Your Honor, there was no opportunity. You know, I just can't buy that. I hear lawyers say that to me all the time. All you have to do is open your mouth and say, Your Honor, can we have a continuance? I understand. Is there any – why didn't you do that? Your Honor, I felt compelled to let the judge, because he was going at such a fast clip, and it seems as though the judge had his mind set on what the determination was going to be, and that is why. If you had to do this over again, would you just stand there, or would you ask for a continuance? Because the cases mostly talk about the denial of a motion for a continuance to go and do the fingerprints, and we don't have that. That is correct. That is what we and Carol Peck, you know, are about. Right. You have something different in this case, though, right? Pardon? Your argument in your brief was slightly different in this case, wasn't it? Right. You were saying that, at least the way I took it, was the I.J. Okay, first of all, under the statutory scheme, the I.J. doesn't have to deny all relief. It's a discretionary, both under the statute and under the regulation, it's discretionary. And what this I.J. did is he said, well, you haven't proven identity, so I'm not going to grant you any relief because you didn't update your fingerprints, so you haven't proven identity, and so I can't grant you any relief. And he didn't exercise his discretion at all, but, again, you didn't request it. But then he turned around and he said, but you've proven identity enough so that I can hold you accountable for all these crimes that came up from the fingerprinting that you did do, and, therefore, I'm denying you voluntary departure. So, and you made that argument that that's sort of an internally inconsistent ruling. I mean, you can't deny relief because there's no evidence of identity, and then turn around and say there's, that the evidence of identity is sufficient to deny you other relief. Right, right. That is a. I think that was your argument, sort of your argument in your brief. That's what I got out of it. Right. That is the argument in the brief. And in addition, Fischer provided criminal documents of his own to the court, which the court also used. So my position is that if the court could have used the criminal documents submitted by the petitioner, that there would have been good enough right of purpose. Wait. Are you saying criminal documents or identity documents? Because in this case, he provided identity documents, right? His birth certificate. Right, right, right. Are you referring to criminal documents he provided? Petitioner also provided criminal documents. Showing his record. Yes, and that was started, the appellate record, page 84, and this is for the immigration judge. And you provided the IJ with documents showing that your client had a problem with the criminal law. Yes, yes. The purpose of the fingerprinting, though, is to update it and to make sure that there's no additional problems with the criminal law during the long interim between one hearing and another. That is correct, Your Honor. So, I mean, everybody agreed he had these crime problems. But the IJ wanted to see, well, let's see if there's something else out here. And we have to get your fingerprint updated to find that out. That would be the case. Where's your client now? Has he been deported? No, he's still in the United States, Your Honor. Did we issue a state of deportation? I believe so. I still don't understand why, going into that hearing, knowing that the fingerprints had not been done, and knowing there was a possibility that that would be the end of the case, that you just stood there and didn't do anything. Well, Your Honor, it had to be something of the moment, the way the proceedings occurred, very, very quickly, in a very kind of a terse moment. Okay. So we're familiar with this IJ. I've read many of his things. And, yes, he does go terse. He goes quickly. And he's very trigger-happy to deny all relief. I've seen this in his cases. And he's more likely than not to also deny a request for a continuance. But you have to at least make the record so that you can get some relief on appeal, right? Right, right. I mean, I know what you're talking about, about how quickly he goes and kind of the tone of it. I get that. But the other equity you have in your favor, though, I would think, is that you didn't ask for a continuance in this case ever. And at the time you appeared for the merits hearing, the fingerprints were valid. They were ready to go. You were ready to go. And it was the IJ who sua sponte continued the thing, which necessitated the update of the fingerprints, right? Yes. Why did you complain about that? You could have complained about that. Well, Your Honor, the court, they have their priorities, and they run their merits according to their time slots. And there was an expedited asylum before us that had to be heard. And so the court indicated that ours could not be heard. And that was on January 22nd of 2004. So it was continued at the time when the fingerprints were valid. Do you think your client has a plausible avenue of relief, notwithstanding the fingerprinting issue? Well, he has a viable asylum application. Now, it's been quite some time that I've had contact with him. Even given his criminal history record? Yes. He still is eligible for some forms of relief, including an IP. Is the felony conviction that he has domestic violence on a minor? I believe it was a minor, yes. Who was the victim of the violence? The victim of the violence would have been his girlfriend's daughter. Have you since moved? You just pursued this appeal. You haven't moved to reopen before the BIA? No, we have not. Given the length of time? No, we have not. And he's in LPR? Is he LPR status? No, no, he's not in LPR status. Okay. All right, counsel, why don't you save the rest of your time for rebuttal. Thank you. Good morning. May it please the Court. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. The issue before the Court is whether the immigration judge abused his discretion in denying the petitioner's applications, where the petitioner was twice instructed of his obligation to submit for fingerprints, and the consequences for failing to do so. He was also given written instructions and was given well over a year to plan for and submit to those fingerprints. He did not do so, did not give a good reason for, and the judge acted well within his discretion in denying those applications. All right. Let me ask you some questions. First of all, did the judge exercise discretion? He has discretion under the statute to require the updating or not require the updating. He does, and under the regulations he has the discretion to, under 8 CFR 208.10 and 1208.10, which the immigration judge and the board both cited to in support of their decisions, states that failure to comply with fingerprint processing requirements without good cause may result in the dismissal of the application. Right, may result. So that means they have the discretion not to. Correct. Not to dismiss or put him at the proceedings, right? Right. And here, on two occasions on I understand that he did instruct him. Now, I don't buy the written instruction argument because the written instructions are in English and obviously the petitioner doesn't speak English. So it doesn't seem to me that giving maybe, you know, they should rethink this, that they should give the instructions in Spanish as well as English. Perhaps so, but on two different hearing dates, the immigration judge directed his We know that. We know that. I'm just trying to walk through all the steps that go on here. Okay. Okay. So he offered as good cause that he had gone to go get the fingerprints. He'd gone to another agency having to do with immigrants. Foreign law agency. Yeah. The Department of Homeland Security, and they had given him a form, or he was waiting to get the form from them to get the fingerprints. Whether that is true or not, I don't know. That was his explanation. Right. That was his explanation. So let's accept that as true. He also did, after some more questioning by the immigration judge, did change his mind and say actually it was too much. He changed his mind? Wait, are you saying he didn't, wasn't trying to get his work authorization? Well, he said that twice as his reason, and then upon, after the immigration judge replayed the tape of the previous hearing, the petitioner did state that it was too much of a. Too much of a something. Too much of a something. Yeah. Okay. So, but, okay, just take as a hypothetical. Would working with the Department of Homeland Security to get your work papers, which requires fingerprinting, not constitute good cause? In the circumstances here, no, because the immigration judge's instructions to the petitioner on two occasions were quite clear that even though he had to do it again, it was unfortunate, but it was something he had to do for the next hearing date in order to go forward on his application. Exactly what was it that he had to do? He had to go to the USCIS, United States Citizenship and Immigration Services Office, And do what when he got there? Put down fingerprints in an electronic scanning thing and then go home. He had over a year to do it, plan for it, make the necessary arrangements. The burden is not onerous, and he failed to. And when he does that, what happens to those prints? Based on my knowledge, the CIS keeps them, maintains them for 15 months. That's their policy, and checks them against the FBI database and does criminal background check. Why don't they just check the old prints against the FBI database? It isn't clear to me why we have to update the fingerprints. The prints are the prints of the prints, and why don't they just automatically update them every so often to make sure there are no new offenses? Based on my research, it is simply the policy that they, the fingerprints per se don't expire, but the length of the validity period only is for 15 months, and part of the reason is with the overwhelming immigration cases, they have limited storage and retrieval capabilities, and that is the reason for requiring updates every 15 months. So that's what it's all about. They can't store all of this stuff forever, so they clean it out every so often. Based upon my research, yes, and the fact that the FBI itself does not maintain fingerprints for more than 15 months on non-criminal cases. This guy had a criminal background. Does it make sense as a policy matter to have immigrants in proceedings give their fingerprints and then not just check it routinely to make sure that we don't have a bunch of criminals in this country? As a policy matter, I... I mean, what is this? I don't understand why we would wipe it out. I don't... Retrieval, storage, whatnot, but in the grand scheme of things, 15 months and going back to re-submit fingerprints is really not an onerous requirement, especially in the circumstances here. He had over a year to plan for this day to go down and just put your fingerprints in for a scan. And is that what he had done the first time? Did we know that's... So he knew how to do this? He knew how to do it. They were timely on the second hearing date. And then the IJ suicide date continued. So there would be no problem at all if the IJ hadn't continued it for his own reasons. Well, it was continued because of intervening expedited removal case, but yes. Well, the IJ did it for his own calendaring reasons or case management reasons. Yes. Yes. Yes. That's the answer. But after that, the IJ acknowledged that, yes, I'm sorry, this is an unfortunate thing. You have to go back and do it. But those are the regulations. The statute says you have to do that. And that's what had to be done. And he failed to comply with the fingerprint requirement. In addition, this court asked me to address the cases in Kew and Karapet. Kwee. Kwee, sorry. And I would say that, first, they're not applicable, as Your Honors noted before, that Petitioner did not ask for a continuance. He did not raise that before the board, suggesting that he should have been granted one. He does not suggest that he should have been and failed to in the brief before this court. He has waived such challenge and just simply did not ask for one. So I suggest the standard of review is not the four factors that this court discusses in Kwee and Karapetian, but simple abuse of discretion. Did the judge act arbitrarily, irrationally, and contrary to law? And under the circumstances here, the immigration judge did not. So all of these cases where the merits of the cases are not being heard and refugees are being deported because their fingerprints were erased after 15 months or they didn't comply, unless they use those magic words asking for a continuance, they're going to be just deported. That's somewhat of a technical distinction, don't you think? No, because he was represented by counsel. It's his burden of doing certain things to get benefits under the Immigration and Nationality Act, and he did not do so. And I see my time is running out. But you're arguing for – so really what you're arguing for is that we publish another opinion that makes sure that everybody knows that there's discretion under these regulations and they have to ask for a continuance. You don't necessarily have to ask for a continuance. Under the circumstances here, the immigration judge had the discretion to deny the application based upon the failure to comply. He did not comply. He was given sufficient – more than sufficient notice, much more than any of the petitioners in CUI and Carapaggian, were just given a one-sentence – Right, because that was under the old rules. The opinion in CUI explains that. It was under the old rules that didn't explain about the instructions. Even the heightened notice requirements that this Court mentions in CUI under 1003.47 CFR, which were technically existing at the time of petitioner's third hearing, under those heightened notice requirements where the immigration judge has to specify for the record that he received written instructions, that he has to comply and do this, even under those heightened notice requirements, the immigration judge's warnings on April 4, 2005, and January 2004 did comply with those heightened notice requirements. He did specify for the record. Right, I was talking about CUI. It was pre those heightened notice requirements. Right, but even though they weren't in enactment at the time, the immigration judge's colloquy did satisfy even under – You're saying in this case. In this case, yes. Okay. Okay. We're just talking past each other. Okay. Thank you. Thank you. Your Honor, our position is that because of when the merits hearing was heard on this case, the heightened rule would apply, but he did not get that heightened rule warning because his last hearing was sometime in 2004. And that was at a time when his case, he was ready to go, got bumped out, and not by his choice. And the judge mentioned somewhere about a written warning regarding the fingerprints, and maybe I made a mistake because I did not find a written warning. I only found the transcript. Did you tell him he had to do this? The petitioner? Go down and get his fingerprints? Oh, yes, yes. We always do. So you went over it with him, and he knew what he was supposed to do. Yes, sometimes things happen, Your Honor. For instance, this petitioner is a migrant worker, and he moves around quite a bit. When was the last time you talked to him? Quite some time, over a year, maybe close to about a year, probably, Your Honor. And that was part of the problem, communication. But I think that if you were – Do you know where he is? Pardon? Do you know where he is? We have contact information that sometimes works, sometimes does not. It's with relatives. But I don't know in particular where he stays. And in light of the circumstances, we think our position is that he – that his case should be reheard on the merits and be re-fingerprinted. Thank you. Thank you, counsel. Quinteros Ramos will be submitted, and we'll take – oh, Ramos Gonzalez will submit on the briefs. We'll take up Hicklen v. Hartford Life and Accident Insurance Company.
judges: Mosman, Trott, Wardlaw